Francis J. Bloustein, J.
In this article 78 proceeding petitioners, as citizens, taxpayers and Assemblymen of this State, seek an order in the nature of mandamus, directing respondents (the Governor, the Director of the Budget, and the Comptroller of the State of New York) to cease expending any further moneys in accordance with certain provisions of the State Purposes Budget, the Local Assistance Budget, the Capital Construction Budget, and the Supplemental Budget, adopted at the last (1969) session of the New York State Legislature. The budgets under attack are contained in chapters 48, 49, 50 and 340 of the Laws of 1969 (appropriation bills submitted pursuant to section 3 of article VII of the Constitution). The petition alleges that the appropriation bills containing the challenged provisions do not comply with the requirements of article VII of the New York State Constitution with respect to the adoption of an appropriation bill. Petitioners assert that certain of the budgetary items contained in the appropriation bills should have been submitted on a “ line ” basis with specific proposed expenditures for the particular line “ items ”.
Petitioners claim that there are three ways in which the constitutional requirements were violated: (1) that the budgets, in a number of instances, consist of ‘ ‘ lump sum ’ ’ appropriations for generalized purposes; (2) that the “line by line” itemization contained in other challenged provisions of the appropriation bills totals in amount a sum in excess of the expenditure limit provided for all the items involved, thus requiring, for compliance with said limit, deletion or modification of some of the items during the budget year by the administrative agencies or heads of such departments, and rendering *599 the legislative enactment or approval of the line items within such budget meaningless; and (3) that in some instances power is granted the Director of the Budget of the State to transfer funds between programs and departments, or, in one case that was cited, personnel between departments, thus, again, rendering meaningless the legislative approval of a “line by line” budget.
In sum, petitioners urge that by these means and devices their function and obligation as State legislators with respect to budgetary matters, as outlined in the State Constitution (art. VII), have been vitiated; their duty to pass upon the budget in a manner which allows for review and approval, elimination or reduction of specific “ line items ” of the appropriation bills rendered nugatory, and their rights as citizens and taxpayers to have a “line by line ” budget submitted as required by constitutional mandate adversely affected.
In moving to dismiss the petition, in addition to supporting the substantive correctness of the actions under attack, respondents also assert the impropriety and untimeline'&s of the reme- • dies invoked; petitioners’ lack of standing to bring the proceeding, either as legislators, taxpayers or citizens of the .State; and the failure to join allegedly necessary parties (those being all who receive or expend State funds).
The claim that petitioners are proceeding improperly is not well founded. A petition such as this, under article 78 of the CPLR is an accepted remedy for challenging the validity of action taken by a public body or officer.
The claim of lack of standing is likewise not well taken. It is clear that the New York State Constitution vests petitioners and their fellow legislators with a special function in the budget-making process (N. Y. Const., art. VII, § 4) and that the acts complained of deprived petitioners and other legislators of their right and duty to pass upon specific items of the budget. An adequate allegation of a deprivation of a right peculiar to petitioners and those similarly situated has thus been shown (see City of Buffalo v. State Bd. of Equalization and Assessment, 26 A D 2d 213, 214).
Moreover, there is a pronounced trend toward permitting wide latitude to- citizens and taxpayers to institute actions against governmental bodies and officers. Respondents urge the authority of the 4 to 3 decision of the Court of Appeals in St. Clair v. Yonkers Raceway (13 N Y 2d 72). The majority opinion of Judge Burke in that case made it clear, however, that he was placing strong reliance on the then prevailing Federal rule as reflected in the decisions of the United States *600 Supreme Court (p. 76). However, since the decision in the St. Clair case, written in 1963, the prior Federal rule was changed by the Supreme Court in Flast v. Cohen (392 U. S. 83 [1968]), where the court held that appellants there, as taxpayers, had a personal stake in the outcome of the proceeding and under the circumstances had standing to institute an action questioning the constitutionality of the expenditure of Federal funds. In this connection, see the well-written and documented article “ Standing to Sue in Public Actions” (78 Yale L. J., 816 [April, 1969]).
Moreover, as legislators, petitioners have a special status (arising out of their representative standing and the obligations as well as powers vested in them) which certainly gives them standing to maintain this proceeding.
Nor was this petition untimely brought. The budget bills attacked were enacted on March 28, 29 and May 2, 1969. Disbursements of funds pursuant to these budgets could not be made until after their enactment. Expenditures are being made continuously under the authority of such bills. Thus, even if it were true, as respondents argue, that the time period prescribed by CPLR 217 commenced running from the last date for submission of the bills by the respondent Governor (which would require holding their enactment merely a formality), the continuing nature of the wrong would permit maintenance of this proceeding.
Nor is there any merit to respondents’ argument of failure to join necessary parties (those being all department heads whose budgets are affected). If the challenged appropriations are illegal, then respondents, who would otherwise have the responsibility for the expenditure of the sums appropriated, should be restrained from making or permitting such expenditures.
The mere fact that petitioners might have sought relief by way of declaratory judgment, rather than in an article 78 proceeding, is not a basis for dismissal of the proceeding. Even if an article 78 proceeding were not a proper remedy, the court has obtained jurisdiction of the parties and it is specifically empowered to make whatever order is required for the proper disposition of this proceeding (CPLR 103, subd. [c]).
On the merits, article VII of the New York Constitution provides, insofar as here pertinent, “ the governor shall submit to the legislature a budget containing a complete plan of expenditures proposed to be made before the close of the ensuing fiscal year” (§ 2), for the submission of a budget by the Governor *601 to the Legislature, which shall be embodied iu “ a bill or bills containing all the proposed appropriations ” (§ 3). Insofar as the Legislature is concerned, its powers with respect to the budget are clearly set forth, primarily, in section 4 of that article, which provides:
“ The legislature may not alter an appropriation bill submitted by the governor except to strike out or reduce items therein, but it may add thereto items of appropriation provided that such additions are stated separately and distinctly from the original items of the bill and refer each to a single object or purpose. * * *
“ Such an appropriation bill shall when passed by both houses be a law immediately without further action by the governor, except that appropriations for the legislature and judiciary and separate items added to the governor’s bills by the legislature shall be subject to his approval as provided in section 7 of article IV.” (Emphasis supplied.)
The constitutional provisions relating to the expenditure of State funds are well conceived and were designed to prevent a grant of unlimited and unrestricted power to expend funds for unspecified objects or purposes. Furthermore, it is clear that the framers of these provisions intended that the specific budgetary items be subject to review by the Legislature. Otherwise the Executive could successfully deprive the Legislature of any opportunity to intelligently review and pass on the budget and the appropriation bills.
Petitioners argue that, as their responsibility as legislators is to “ strike out ”, or “ reduce ” items or “ add ” items, this function cannot be fulfilled unless the budget itself is itemized and presented on a “ line by line ” basis.
In People v. Tremaine (281 N. Y. 1, 5, 7) the Court of Appeals, in construing the very same constitutional provisions here involved, agreed: “ The Governor’s budget is to be itemized so as to show of what the estimates consist. The information necessarily consists of items. The Constitution means that the budget, and the appropriation bills accompanying it, shall be broken down into items sufficient to show what money is to be expended, and for what purpose. It is information the Governor must give, and it is the items giving this information which is embodied in his appropriation bills. * * * The present Constitution emphasizes the necessity of items, not lump sums, for an entire department or bureau.” (Emphasis supplied.)
The 'specific budgets under review, on their face, fail to meet these standards. A glaring example of a bald “lump sum” *602 appropriation which, except for a handful of minor items, gives the Legislature no opportunity to “eliminate” or “reduce” any “items” is found in the State Purposes Budget headed Executive Chamber, for which $2,958,945 is provided. The only explanation in the appropriation bill is for: “services and expenses, including travel outside the state and including $3,000 each to the secretary, to the governor, the counsel to the governor, the press secretary to the governor, the executive assistant to the governor, the deputy secretary and executive officer and the appointments officer in lieu of all traveling expense within the state.”
Another example of an improper “ lump sum ” appropriation is to be found in the appropriation bill by the Department of Motor Vehicles. $22,112,555 is appropriated in a schedule which provides for five items with 1 ‘ lump sum ’ ’ items for each of such items. Such items include administration, driver licensing, driver safety, vehicle regulation, and central services. The same thing is true with respect to the appropriation for the Department of Taxation and Finance, where an appropriation is made for $50,068,641. Here, too, a schedule is provided breaking such sum down to eight general categories, each one with a ‘1 lump sum ’ ’ figure.
Similarly, the appropriation for the Department of Transportation provided a “ lump sum ” of $371,500,000 for a large variety of stated general purposes, without even making any allocation as between such purposes. Among these are: 1 ‘ the cost of acquisition of property * * * the construction, reconstruction or improvement of state highways * * * the construction of grade crossing elimination structures * * * for the preparation of designs * * * for the construction, reconstruction or improvement of arterial highways * * * for the * * * repair of other structures, highways and facilities, for * * * farm-to-market roads, rural free delivery mail and public school bus routes and * * * . For payment of the cost of relocating flashing light signals, gates and other means * * * at # * * railroad grade crossings ”.
Under such a lump sum appropriation the entire sum could be spent in the uncontrolled discretion of the Executive because of the absence of ‘ ‘ line items ’ ’. The Legislature, when the budgets and appropriation bills were submitted to it, could not properly exercise its judgment, for it was faced with a 11 lump sum item ” take it or leave it “ Hobson’s choice ”. Failure to approve the appropriations in the form submitted might thus have caused a standstill in all highway projects planned by the State and to which the State contributed.
*603 To the same or a lesser degree, other sections of the appropriation bills concerned are not in conformity with the applicable constitutional requirements.
It is not possible in the time at the court’s disposal to make a detailed analysis of each of the departmental appropriations contained in the appropriation bills here challenged.
When the challenged appropriation bills were submitted and adopted, the legislators had no opportunity to strike out or reduce items where ‘ ‘ lump sums ’ ’ were requested, since such “lump sum” requests did not include specific items of expenditure.
The well-established principle of the separation of powers in government is here applicable. The Constitution provides that the Governor shall prepare and submit appropriation bills to the Legislature. Thereafter, the Legislature is empowered to exercise its constitutional obligations with respect to such submission (N. Y. Const., art. VII, §§ 3, 4).
It is perfectly clear that the method provided for the submission and consideration of budgets and of appropriation bills should apply equally to both the Governor in his submission to the Legislature and to the Legislature in adding ‘ ‘ items ’ ’ to the appropriation bills. Neither may infringe on the duties and the responsibilities of the other. The Governor must give the Legislature an opportunity to exercise its powers in ‘1 striking out ”, “ reducing ”, or “ adding ” “ items ” to the appropriation bills, and if ‘ ‘ items ’ ’ be added by the Legislature, then the Governor has an opportunity to exercise his veto power as provided by the Constitution (art. IV, § 7). To deny to the Legislature an opportunity to “strike out ” or “reduce” an “item” by submitting a “lump sum” appropriation is to frustrate and nullify the clear purpose of the concept of budget-making and of budgetary controls.
The issue under review was, in the court’s opinion, determined in the Tremaine case.
Furthermore, the Attorney-General of this State held, even prior to the Tremaine case, that the Legislature is without authority to amend an executive budget bill submitted to it by the Governor by striking out ‘ ‘ line item ’ ’ appropriations and submitting in their place 1 ‘ lump sum ’ ’ appropriations for the same purposes (1939 Opns. Atty. Gen. 123). In his opinion he said, among other things (p. 124): “ after a long struggle, the Constitution was amended in 1927, to provide a systematic plan of appropriation, originating with the executive. [Report of State Reorganization Commission (Legislative Document No. 72 of 1926), pp. 8-14]. Nothing in the recent amendments of the *604 Constitution alters, except in matters of detail, the broad general plan adopted by the people in 1927. ’ ’
In addition, in 1940, after the Tremaine decision, the Attorney-General expressed similar views with respect to this subject matter (1940 Opns. Atty. Gen. 450) in an opinion to the Senate and Assembly of the State of New York concerning a proposed amendment to article VII of the Constitution (the article involved in the present proceeding):
“ This concurrent resolution proposes to amend section 3 of Article VII of the Constitution so as to give the Legislature power to prescribe a lump sum form in which the Governor must submit his budget appropriation bills. By permitting legislative determination in advance of the form of budget bills, the proposal, if adopted, will nullify the present purpose and effect of section 4 of Article VII which protects the budget bills as formulated by the Governor from alteration by the Legislature except by reduction or elimination of items or addition of new items for additional purposes (People v. Tremaine, 281 N. Y. 1).
“ The general effect of the proposal would seem to be a modification of the principle of the present executive budget system under Article VII of the Constitution.”
For the same reasons that the Attorney-General found that the Legislature could not substitute “ lump sum” appropriations in the place of “ line item ” appropriations submitted by the Governor in his executive budget, the Governor may not submit an executive budget with 1‘ lump sum ’ ’ items in the place of “ line items ”.
Lump sum appropriations in a budget submitted for the City of New York under the City Charter were similarly held to be invalid in Wilmerding v. La Guardia (268 App. Div. 496, 498) where the Appellate Division of this Department said: ‘1 Perusal of the sections of the Charter relating to the preparation of the City Budget (§§ 111-132, inclusive) read in the light of the statutory purposes to be served, discloses the intention of its drafters to have the Charter provide a comprehensive scheme for subitemization of budgetary code items through supporting schedules so as to (1) permit a comparison of items with similar appropriations for preceding years, (2) facilitate public hearings and discussions concerning the necessity for the proposed items of expenditure, and (3) enable the City Council to examine the budget as proposed and determine which items are proper and necessary. Intelligent fulfillment of these statutory objectives would require that itemization be sufficiently explicit to disclose with reasonable clarity the purposes for which the money is proposed to be expended. ’ ’
*605 See, also, Matter of Block v. Sprague (285 N. Y. 69) where the Court of Appeals held, in reference to a budget submitted by the County Executive of Nassau County, the 11 proposed budget must contain line by line items and may not consist of lump sums where it is practical to state the items ” (p. 72).
The court does not accept petitioners’ position on the second point raised in the petition, dealing with the budget bills that contained “ line items ” but provided for an aggregate appropriation amounting to less than the sum total of the “ line items ’ ’. The Legislature in this situation was afforded an opportunity to review the items on the “ line ” budget (albeit that such “ line items ” were not specific but generalized) and could have eliminated or reduced certain of such items. In any event, it is not uncommon to afford the administrators and heads of departments power to establish priorities and to determine which programs shall be implemented first and which items deferred, and thus the departmental expenditures may come within the expenditure limitation established in the appropriation bill. Furthermore, it is accepted budgetary practice that not all that is appropriated is expended or committed. Almost every State agency ends its fiscal year with unexpended or uncommitted balances.
With respect to the last of the three points raised in the petition, petitioners are justified in their complaint that the mandates of article VII of the Constitution regarding adoption of State appropriations were violated by the provisions of the challenged appropriation acts which purport to authorize an increase or decrease in the amount provided for any item or items in a schedule by interchange with any other item or items in such schedule, with the approval of the Director of the Budget, and which purport to sanction an increase or decrease in the amount provided for any program in a schedule, by interchange with any other program in the schedule, with like approval. The petition cites the Executive Department — Office of Local Government — where the following appears in the appropriation bill: “ Notwithstanding the provisions of the state finance law the amount provided for any program therein may be increased or decreased by interchange with any other program in the schedule with the approval of the Director of the Budget ”. (Emphasis supplied.)
In the appropriation for the Division of State Police, the appropriation bill provides: ‘ ‘ The amount of any item or items therein may be increased or decreased by interchange with any other item or items in the schedule with the approval of the Director of the Budget ’ ’.
*606 In the appropriation bill relating to the Narcotic Addiction Control Commission, language appears permitting the Director of the Budget to transfer employees or positions from or to any other State department or agency. The appropriation bill reads: “ Notwithstanding any other provision of law, the Director of the Budget is hereby authorized to transfer positions and/or employees from or to the narcotics addiction control commission to or from any other state department or agency upon the mutual consent and request of the chairman of the narcotics addiction control commission and head of such other state department or agency.”
The dollar amount set forth in an item or the total dollar amount set forth with respect to a program is obviously intended by the Constitution to constitute a ceiling on expenditures for such item or program. If it were permissible to authorize the Budget Director to transfer amounts from item to item or program to program, the ceilings would become meaningless, both as proposed to the Legislature by the Governor and as incorporated in finally enacted appropriation statutes. This device would in effect, in violation of article VII, transform a schedule of items or a schedule of programs into a “ lump sum ” appropriation for the whole of the subject matter included in the schedule.
In sum, this court is constrained to follow the determination reached in the Tremaine case (281 N. Y. 1, 10, supra) where the Court of Appeals said: “ The Governor is obliged to furnish the items or information making up the appropriation, and cannot submit it as a lump sum. The appropriation for a department must be in such form that the Legislature may be 1 able to strike out or reduce any of its items. When the word ‘ item ’ or ‘ items ’ is used in connection with the budget, as it was in 1928, or as used in 1938 for the estimates of the Legislature and the Judiciary, and in section 4 in reference to the ability and power of the Legislature to strike out or reduce ‘ items ’, the meaning of the words is the same. The appropriations so far as practicable or possible are to be itemized as submitted, and the limitation on the Legislature is to reduce or strike out the items. To strike them all out and substitute lump sums is to revert to the old system which years of agitation and endeavor have sought to abolish.”
The constitutional restraints and limitations heretofore discussed must be observed by those in public office. This court will not permit the mere fact of the adoption of the challenged appropriation bills to deprive it of jurisdiction over the subject *607 matter now before it and an opportunity to review the questions raised by the petition. Petitioners have asked, and the court wants to insure, that the practice of submitting “ lump sum ” items in appropriation bills, contrary to the provisions of the present Constitution, will not be repeated.
No useful purpose would be served by granting the respondents time to answer and setting the matter down for a hearing or a trial. Indeed, no suggestion has been advanced by respondents that there was any triable issue of fact here presented. Nor did they request an opportunity to answer. We are dealing now solely with questions of law. In this proceeding, there was ample argument before the court and, in addition, the court had before it the petition, respondents’ motion to dismiss the petition, and an affidavit in support of such motion, together with memoranda of law. The only questions are legal ones. All the issues are before the court for consideration. The court can reach a determination without further papers or evidence.
While the Court of Appeals stated in the Tremaine case (supra) that a “ lump sum ” appropriation might in exceptional circumstances be justified where it would be impractical or impossible to itemize the sum required on a “line by line” budget (p. 7), no suggestion has been made by respondents that any such exceptional circumstances are here to be found. Thus, in the case of the $371,500,000 “lump sum” appropriation for the Department of Transportation, it can hardly be claimed that it would be impractical to. allocate specific sums for any of the diverse objects and purposes embraced by the single “lump sum ” set forth. Obviously, this sum was not arrived at arbitrarily or in a vacuum. It must be assumed that it had its genesis in extensive planning for the many construction and reconstruction jobs, developments and improvement projects, with estimated costs for each particular item set forth as the contemplated work schedule for the Department of Transportation for the fiscal year. Prudent administrative procedures and management would require this kind of study, planning, analysis and treatment. Nor are such plans and objectives arrived at without time-consuming studies and estimates of cost.
It must be concluded that the 1 ‘ lump sum ’ ’ is the total of all the ‘ ‘ line items ’ ’ and could have been submitted as ‘ ‘ line items ’ ’ in the appropriation bills with respect to particular projects.
The court takes notice that there is pending a call for a special session of the Legislature by the Governor for some time in November, 1969, and that it is possible that, at least as to future acts and expenditures in reliance on the appropriation bills *608 under attack, correction of the invalid adoptions above referred to can be effected.
Motions numbered 29 and 148 of July 24,1969, are consolidated and disposed of in this opinion.
The motion to dismiss the petition is denied.
Petitioners’ application for an order restraining respondents from expending further funds under the appropriation bills here held invalid is granted. It is the court’s decision that the further expenditure of funds by respondents under the appropriation bills here held to violate the provisions of article VII of the State Constitution would be illegal.
However, in view of the effects the immediate implementation of such an order would have on the orderly processes of State government, the order of this court shall be held in abeyance pending a hearing which this court directs to be held at the earliest possible opportunity. Such hearing shall concern itself with the nature and extent of the appropriate relief necessary to implement the order hereby granted and an order of enforcement shall issue thereafter.